**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KERVIN L. | : | |
| v. | : | NO. 24-CV-927 |
| FRANK BISIGNANO, Commissioner of Social Security | : | |

**OPINION**

SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE

DATE: November 9, 2026

Kervin L. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). He has filed a Request for Review to which the Commissioner has responded. As explained below, Kervin L.'s Request for Review is denied.

I. *Factual and Procedural Background*

Kervin L. was born on December 1, 1977. R. at 79. He completed his GED. *Id.* He worked in the past as a horticultural worker, material handler, and store laborer. *Id.* On December 4, 2017, Kervin L. completed an application for DIB and SSI, alleging disability since May 30, 2017, mainly due to lumbar degenerative disease with radiculopathy and sacroiliitis, obesity, and diabetes mellitus. R. at 64.

Kervin L.'s application for benefits was denied on May 10, 2018. *Id.* Kervin L. then requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* A hearing was held in this matter on October 19, 2022. *Id.* On January 5, 2023, the ALJ issued a written decision denying benefits. R. at 64-81. The Appeals Council denied Kervin L.'s request for review on January 5,

2024, permitting the ALJ's decision to serve as the final decision of the Commissioner of Social Security. R. at 1. Kervin L. then filed this action.

II. *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

> The final two steps of the sequential evaluation then follow:
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III. *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ determined that Kervin L. suffered from severe impairments of lumbar degenerative disc disease with radiculopathy and sacroiliitis and obesity, but that his other impairments were not severe.[1] R. at 67-68. She found, however, that none of his impairments, and no combination of impairments, met or medically equaled a listed impairment. R. at 68. The ALJ found that Kervin L. retained the RFC to engage in a limited range of light work with the following limitations:

> [He can only]occasionally use [] foot controls with the bilateral lower extremities; occasional[ly] balance[], stoop[], kneel[], crouch[], crawl[] and climb[] [] ramps and stairs, but never climb[] on ladders, ropes or scaffolds; and occasional[ly be] exposure[d] to extreme cold and vibration and hazards such as unprotected heights and unprotected moving mechanical parts.

R. at 69.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined that Kervin L. could not return to his previous work, but could work as a

[1] Kervin L. inaccurately states the ALJ's findings. He wrote in his Brief that the ALJ found his severe impairments to be "lumbar degenerative disc disease with radiculopathy and sacroiliitis, and obesity with diabetes mellitus, obesity, hyperlipidemia, hypertension, GERD, esophagitis, bleeding, abdominal pain with constipation, rectal bleeding, and hemorrhoids." ECF 10 at 14-15. This is an overstatement. The ALJ found only the lumbar degenerative disc disease with radiculopathy and sacroiliitis and obesity to be severe. R. at 67. The ALJ found all other impairments listed here to be non-severe. R. at 67.

housekeeper/cleaner, laundry folder, or marker. R. at 79-80. She decided, therefore, that he was not disabled. R. at 81.

In his Request for Review, Kervin L. maintains that the ALJ erroneously determined that he does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. ECF 10 at 19. Further, Kervin L. argues that the ALJ's RFC determination was not supported by substantial evidence because she failed to adequately consider his subjective complaints of his symptoms and the opinion of his treating doctor, Dr. Matilde Sotomayor. *Id.* at 20-8.

IV. *Discussion*

A. *The ALJ's Error at Step Three was Harmless*

At Step Three, the ALJ concluded that Kervin L.'s impairments did not meet or medically equal a listed impairment in the SSA's Code of Federal Regulations (hereinafter, "CFR"). R. at 68. Kervin L. argues that the ALJ failed to adequately consider his obesity in conjunction with his other impairments at this step and, therefore, erroneously determined that his impairments did not meet or medically equal a listed impairment. ECF10 at 18. The undersigned agrees with Kervin L. that this was error. However, the error was harmless.

At Step Three, an ALJ is "required to determine whether any of a claimant's impairments, alone or in combination with other impairments, meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1." *Craig B. v. Comm'r of Soc. Sec.*, No. CV 20-13004 (KM), 2022 WL 557883, at *5–6 (D.N.J. Feb. 23, 2022) (internal citations omitted). The ALJ is also required to consider the impact of a claimant's obesity at every subsequent stage of the analysis. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

Here, the ALJ determined that Kervin L. had severe impairments of obesity and lumbar disc degeneration with radiculopathy and sacroiliitis at Step Two. R. at 67. Then, at Step Three, the ALJ acknowledged that "functional limitations caused by […] obesity, alone or in combination with another impairment(s), may medically equal a listing," and that "obesity may increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing." R. at 68 (citing SSR 19-2p). However, rather than performing a fulsome analysis of the impact of his obesity on his other impairments at Step Three, the ALJ instead wrote:

> Any effects of the claimant's obesity should be reflected in subjective complaints, physical examination results, and laboratory findings, all of which have been considered in reaching the conclusions herein. The claimant's obesity is not of listing level but has [] been considered in conjunction with his concomitant physical impairments in reducing him to a range of light work at all times relevant to this decision.

R. at 68. She then evaluated whether Kervin L.'s lumbar spine impairment met the criteria of Listing 1.15 (nerve root) and ultimately decided it did not. R. at 68-69. At no point during the Step Three analysis did the ALJ explicitly discuss Kervin L.'s obesity in conjunction with his other impairments, which is undoubtedly a procedural error. R. at 68-69; *Craig B.*, No. CV 20-13004, 2022 WL 557883, at *5–6; *Roman v. Comm'r of Soc. Sec.*, No. CV 19-5756 (KM), 2020 WL 6268673, at *6 (D.N.J. Oct. 26, 2020).

However, the ALJ's error at Step Three does not warrant remand. Third Circuit courts consistently find that an ALJ's failure to discuss obesity during Step Three to be harmless error when an ALJ explicitly considers a plaintiff's obesity during the RFC analysis. *Craig B.*, No. CV 20-13004, 2022 WL 557883, at *5–6; *Roman*, *supra*, at *6 (citing *Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015). "A statement by an ALJ in a decision denying benefits that the ALJ has 'considered any additional and cumulative effects of obesity,' when coupled with even a

brief factual analysis of the medical evidence as it relates to obesity and impairment, is sufficient to satisfy this duty of articulation." *Geiser v. Saul*, No. 1:19-CV-1935, 2020 WL 3172746, at *7 (M.D. Pa. June 15, 2020) (citing *Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014)).

Accordingly, though the ALJ only briefly mentioned obesity at Step Three, she resolved this error by addressing obesity repeatedly in the RFC analysis at Step Five. *Id.* There, the ALJ referenced multiple instances in the medical record where obesity or a need for weight loss was noted by Kervin L.'s providers (R. at 70, 71, 72, 76) and explicitly cited his concomitant obesity as a basis for her RFC conclusion. (R. at 76, 77). What is more, the ALJ distinctly discredited one consultative examiner's opinion, "as it [did] not adequately address limitations associated with the claimant's back pain and obesity." R. at 77.

At Step Five, the ALJ both examined Kervin L.'s obesity within the context of the overall record (*Geiser*, No. 1:19-CV-1935, 2020 WL 3172746, at *7 (citing *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016))) and explicitly stated that she considered Kervin L.'s obesity when assessing his residual functional capacity. *Id*. (citing *Hoyman*, *supra*, at 680 and *Medina v. Berryhill*, No. 3:17-CV-1941, 2018 WL 3433290, at *6–7 (M.D. Pa. June 8, 2018), *report and recommendation adopted*, No. CV 3:17-1941, 2018 WL 3426408 (M.D. Pa. July 16, 2018)) Thus, this claim does not warrant a remand of this case. *Id.*

Additionally, Kervin L. fails to point to any evidence of record demonstrating that his obesity alone or in combination with other impairments equals one of the listing impairments or impedes his ability to perform light work with the ALJ's added limitations. *See Roman,* No. CV 19-5756, 2020 WL 6268673, at *6 (internal citations omitted). Kervin L. supports his position by citing his providers' warnings that his obesity posed great risks during surgery. ECF 10 at 15-8.

He does not argue that any provider restricted his ability to work due to his obesity. Thus, his argument also fails on these grounds. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (Finding remand unwarranted if plaintiff fails to demonstrate that his weight impaired his ability to work, "particularly when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis" for her findings).

Although the ALJ's Step Three analysis lacked robust discussion of Kervin L.'s obesity and its impact on his other impairments, this error was harmless. The ALJ's incorporation of obesity into her decision at Step Five resolved the failure to do so at Step Three. Accordingly, this claim is denied.

B. *Substantial Evidence Supports ALJ's RFC Assessment*

Kervin L. argues that the ALJ's RFC assessment at Step Five is not supported by substantial evidence. He claims the ALJ failed to properly evaluate his subjective complaints about his symptoms and the opinion of his treating doctor, Dr. Sotomayor. ECF 10 at 20-8. He also contends that the ALJ failed to adequately incorporate the testimony of the vocational expert into her decision. ECF 10 at 26. For the reasons that follow, the undersigned finds that substantial evidence supports the ALJ's Step Five conclusion.

1. *Kervin L.'s Testimony*

At the hearing, Kervin L. claimed that he could not stand, walk, or sit for more than five minutes at a time (R. at 31), and stated that before surgery he "could not go even one second without pain." R. at 32. He added that before his surgery he could not lift any weight at all, and after it, his doctor suggested that he may only be able to lift a gallon of milk. *Id.* He testified that he returned to work light duty following his injury in 2015 until the resolution of his worker's

compensation claim in 2017. R. at 29-30. Thereafter, he claimed that he remained unemployed due to his worsening medical condition and his inability to work. R. at 30.

Although the ALJ concluded that Kervin L.'s impairments could reasonably be expected to produce some of the symptoms he alleged, she found that his testimony as to the intensity, persistence and limiting effect of his symptoms was not entirely consistent with the medical evidence and other evidence of record. R. at 70. This analysis is compliant with the two-step test for evaluating subjective testimony outlined by SSR 16-3p. In coming to this conclusion, the ALJ relied on objective medical findings, Kervin L.'s reported daily activities, and a lack of treatment between 2018 and 2021. R. at 70-6.

As the ALJ described, aspects of Kervin L.'s subjective complaints are contradicted by both objective and subjective evidence of record. For example, with respect to Kervin L.'s extremely limited characterization of his ability to walk, stand, sit, and lift, objective medical records demonstrate that Kervin L. was far less limited than he described. Between intermittent observations of antalgic gait, tenderness, numbness and diminished range of motion (R. at 675, 676, 688, 750, 824, 832) many treatment notes indicated generally normal findings as to gait and station, strength, and ambulation, as well as pain-free lower extremities, suggesting a fluctuation in symptoms over the disability period. R. at 622-638, 750, 794, 824, 832, 840, 841. His primary care provider repeatedly noted that Kervin L. could walk without restrictions. R. at 622, 625, 629, 632. Pain management providers observed that his "current pain regimen allow[ed] him to carry out his [activities of daily living] adequately and for improvement in functional mobility." R. at 842. In May 2021, when he returned to medical treatment after a two-year hiatus, his providers documented that the pain had only begun two months prior, and the only abnormal physical observation was an unsteady gait. R. at 951. Even weeks before his surgery, a period

wherein he reported the least amount of relief with medical intervention, providers noted he had normal range of motion and denied numbness and other symptoms of neuropathy. R. at 1208-9, 1272. His surgeon observed moderate distress and difficulty bearing weight on his leg due to pain, but after his surgery, Kervin L. reported that his leg pain had "almost completely resolved" and that his back pain had improved. R. at 1171, 1298. Beyond immediate post-surgical recommendations to keep a sedentary activity level for two weeks before gradually increasing activity, there was no evidence that Kervin L. was restricted by his surgical team in terms of his ability to walk, stand, sit, or lift. R. at 1172.

Furthermore, as the ALJ aptly pointed out, many comments throughout the record also "suggest his daily activities were somewhat greater than his self-report." R. at 74. Though Kervin L.'s pain and abilities seemingly fluctuated throughout the disability period, many of his self-reported activities are in direct conflict with his testimony regarding his loss of functioning. In his disability Function Report, he wrote that his day-to-day schedule included helping his children get ready for school, grocery shopping, and driving to medical appointments. R. at 441. He stated that he had no issues with personal care besides tying his shoes (R. at 441), could efficiently perform housework (R. at 442), shopped (R. at 443), socialized (R. at 444), and could walk four blocks at a time (R. at 445). Later in the record, he described to doctors that he had been going to his office in church (R. at 441), and "do[ing] work for himself." R. at 971. He socialized with family and other churchgoers. R. at 444. He reported going out to dinner often, which contributed to his mismanaged diabetes. R. at 971. Most significantly, in 2018, he sought emergency care after falling from a ladder[2] seven feet in the air as he was working on his house.

[2] Some medical notes describe that Kervin L. was climbing on a 2x4 (R. at 674), while others state he was climbing a ladder (R. at 683).

R. at 674, 683, 692. Such activities are contradictory with Kervin L.'s allegations of loss of functioning.

It is important to note that the ALJ did not entirely discredit Kervin L.'s subjective complaints about his symptoms. She accurately describes the documentation of his symptoms, including their fluctuation over time, and, in fact, accepted parts of the testimony that were supported by other evidence of record. She found his lumbar radiculopathy and obesity to be severe. R. at 67. She also specifically cited his complaints of pain aggravated by movement in formulating her RFC determination *and* rejected those opinions that did not adequately provide for the impact of those conditions on his ability to work. R. at 76, 77. Accordingly, substantial evidence supports the ALJ's evaluation of Kervin L.'s subjective complaints.

2. *Dr. Sotomayor's Functional Assessments*

Kervin L. was treated by his primary care doctor, Dr. Matilde Sotomayor, between 2016 and 2018. R. at 595-652. After a two-year lapse in treatment, Kervin L. returned to Dr. Sotomayor for a Physical Residual Functional Capacity assessment on March 4, 2020. R. at 939-942. Dr. Sotomayor opined in this assessment that Kervin L.'s ability to work would be extremely limited, finding that: his pain would constantly interfere with his attention and concentration; he could only sit for 30 minutes and stand for 1 hour at a time; could sit, stand, and walk for a combined total of less than 4-hours in a given workday; he must take walk and rest breaks every 15-60 minutes; elevate his legs 20-25% of the time; never look up; rarely look down or turn his head laterally; never twist, stoop, or climb ladders; rarely crouch/squat; and he would miss 4 or more workdays per month. *Id*. Three months later, Dr. Sotomayor opined again that Kervin L. was extremely limited in his ability to work, restricting him to sedentary work with the inability to sit, stand, or walk for a combined 8-hours, with additional restrictions. R. at

943-6. The ALJ found Dr. Sotomayor's functional assessments unpersuasive, explaining that they were not only unsupported both by her prior treatment notes and the lapse in treatment between 2018 and 2021, but also inconsistent with other evidence in the record. R. at 78-9.

The ALJ's conclusion is supported by substantial evidence. The two most important factors for the ALJ to consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a); *Rose v. Kijakaz*i, No. 20-3222, 2022 WL 910093, at *5 (E.D. Pa. March 29, 2022). Supportability means "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source." *Cota v. Kijakazi*, No. 21-cv-672, 2022 WL 3686593, at *5 (M.D. Pa. Aug. 25, 2022); 20 C.F.R. § 404.1520c(c)(1). As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Consistency means "the extent to which the medical source's opinion is consistent with the record as a whole." *Cota*, 2022 WL 3686593, at *5; 20 C.F.R. § 404.1520c(c)(2). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). A key difference between the two is that "supportability considers the evidence and explanations 'presented b[y] a medical source' whereas consistency looks at 'evidence from other medical sources and nonmedical sources in the claim ....' " *Gongon v. Kijakazi*, 2023 WL 3919467, at *13 (E.D. Pa. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)). In accordance with the regulations, the ALJ

performed analyses of Dr. Sotomayor's opinions and found them unpersuasive given their inconsistencies with other objective medical evidence and lack of support from her prior treatment notes.

Dr. Sotomayor's 2020 assessments lack support from her prior treatment records and medical findings. Despite her extremely restrictive findings in 2020, Dr. Sotomayor's prior treatment records repeatedly describe Kervin L.'s normal gait and station, ability to walk without restrictions, and never mention need for breaks or manipulative limitations. R. at 622-638. Indeed, over the several years of previous treatment she did note that Kervin L.'s conditions were worsening, but at no point did she recommend restrictions that align with her later assessments. R. at 939-946. Though it is possible that Kervin L.'s symptoms may have changed over the two years between the previous treatment and the 2020 functional assessments, Dr. Sotomayor failed to document specific changes in his condition, reasoning for the lapse in treatment, or any supporting explanations for her opinions based on any past objective findings.[3] *Id*. Overall, Dr. Sotomayor's functional assessments are not supported by her own objective medical findings.

Dr. Sotomayor's 2020 opinions were also inconsistent with the other evidence of record. There is no other objective medical evidence that is comparably restrictive on Kervin L.'s ability to work. There is also no objective evidence in the record that Kervin L. was as limited in sitting, standing, or walking as Dr. Sotomayor opined, and no providers limited him to sedentary work or mentioned such frequent needs for breaks, absences, or consistent pain. Although Kervin L. commonly complained of pain, his reported daily activities demonstrated that he was not as limited in his abilities as Dr. Sotomayor's opinions suggest. As mentioned, he described his

[3] Interestingly, at the ALJ Hearing in October 2022, Kervin L. testified that he stopped seeking treatment with Dr. Sotomayor because they were "kind of disagreeing." R. at 38. He then sought treatment elsewhere. *Id.*

activities to doctors including climbing ladders, going to work, helping around the house, and more, which are directly inconsistent with Dr. Sotomayor's assessments. Also inconsistent with Dr. Sotomayor's opinions is Kervin L.'s failure to seek medical treatment for nearly a year following the functional assessments. As such, Dr. Sotomayor's 2020 medical opinions are inconsistent with other evidence of record.

Dr. Sotomayor's 2020 functional assessments are both unsupported by her prior medical findings and inconsistent with other record evidence. Accordingly, substantial evidence supports the ALJ's conclusion that Dr. Sotomayor's opinions were unpersuasive.

C. *Vocational Expert's Testimony*

Finally, Kervin L. challenges the ALJ's RFC conclusion given the testimony of the vocational expert at the hearing. First, Kervin L. states that the vocational expert did not answer whether he could return to his past work. ECF 10 at 26. This is false. The vocational expert stated that an individual with plaintiff's limitations could not perform his past relevant work. R. at 42.

Next, Kervin L. posits that the ALJ disregarded the vocational expert's testimony that there were no jobs in the national economy that could accommodate certain restrictions which were aligned with more highly restrictive functional limitations and similar to Dr. Sotomayor's assessments. ECF 10 at 26. The ALJ may disregard any answer to a hypothetical question provided by the vocational expert that he or she finds is not credibly supported by the record. *See Jones v. Barnhart*, 364 F.3d 501, 506 (3d Cir.2004) (stating that "because the hypothetical was inconsistent with the evidence in the record, the ALJ had the authority to disregard the response"). Accordingly, Kervin L.'s final challenge to the ALJ's decision also fails.

V. *Conclusion*

In accordance with the above discussion, the Plaintiff's Request for Review is denied.

BY THE COURT:

*/s/ Scott W. Reid*

SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE